May it please the Court, Elizabeth Wydra for the Petitioner in this case. With the Court's permission, I would like to reserve three minutes of my time for rebuttal. You may do so. You have a clock right in front of you. Yes. Thank you. Petitioner Ornelas-Chavez fled to the United States from Mexico after experiencing decades of abuse, including repeated rapes, attempted murder, severe beatings, and unlawful detention, inflicted upon him because he is a gay man with a female sexual identity. Despite the fact that Immigration Judge Anna Ho found the evidence of this abuse to be credible, the IJ and the BIA denied Ornelas-Chavez's applications for withholding of removal and Convention Against Torture Relief. These decisions were an error because the agency applied incorrect legal standards to his claims. Counsel, let me just interrupt here since your time is limited. Let's assume that the wrong legal standards were applied. Why wouldn't we apply harmless error analysis? Your Honor, first, the agency did not assess the evidence under the proper legal standard which affects the outcome of the case in a way that cannot be harmless because with respect to the withholding of removal claim, the agency apparently imposed a categorical rule that either the abuse must have been at the hands of a public actor or, if perpetrated by private individuals, that it must have been reported to the police. If the agency did apply, as we believe, this incorrect legal standard, then it would have disregarded all of the evidence of private abuse, including repeated rapes at a young age, severe beatings, and death threats that occurred at the hands of private individuals. Well, then, under our case law, wouldn't it be appropriate, then, to remand rather than having us make the decision in this case? Under the Ventura case, under the Asinore case and so forth, isn't remand required? Judge Nelson, I do not believe that remand is required because the record as it stands is compelling that withholding of removal and Convention Against Torture Relief is warranted. I thought those cases indicate that we first have to remand and let that decision be made, and then we can review that decision. Do you have any cases that hold otherwise? Your Honor, my reading of Ventura is that if the record is clear and there's no question as to any reasonable factfinder finding that relief is warranted, then the court may reverse in that case. However, if the court does believe that the more prudent course is to remand, we believe that that would also be appropriate at a minimum because of this incorrect legal standard applied in the withholding case and also the incorrect legal standard applied in the Convention Against Torture claim. In that case, it would be that the I.J. implied a sanction rather than acquiescent standard to the Catt claim in violation of this Court's decision in Jing v. Ashcroft. But, Your Honor ---- But what is the showing on your Catt claim, your Convention Against Torture claim, that the government tolerated, acquiesced, consented, even knew about any of this? Well, first, Your Honor, there are instances in which the government was directly involved in the torture he suffered. For example, when the chief of police threw Ronelleth Chavez in jail specifically to punish him for his sexual orientation. All right. Now, that was one event never repeated and many, many years ago. Isn't that correct? He was not again thrown into jail. However, he was released under threat of further and prolonged detention if the chief of police ---- And how many years was that before he left Mexico? I believe, Your Honor, that that was approximately 12 to 14. All right. However, Ronelleth Chavez did leave Ticario because he felt that he could not live there safely as a gay man with a female sexual identity. And the police ---- That's quite understandable. But the problem is that in order to establish a claim under Catt, you have to show government participation, do you not? Yes, Your Honor. Well, you ---- And is that one event enough? That one event ---- Fourteen years before he left? Your Honor, there are other events that show that the government was directly involved. For example, when Ronelleth Chavez worked in the prison, officers there not only regularly beat him, but also on one occasion attempted to kill him by smothering him with a pillow. This Court has held that persecution and torture can be comprised of severe physical violence as well as threats of death. And in this case, the government, in the first instance of unlawful detention and in the second instance of the beatings and attempted murder at the prison, certainly their actions rise to that level. Additionally, there's evidence that the government would have been willing to turn a blind eye to the abuse he suffered at the hands of private individuals. In fact, his fear was confirmed as well-founded when two of his transgendered friends were kidnapped, brutally raped, and murdered by police. As he credibly testified, he believed that the police would come after him because some of the individuals who worked at the prison had joined the police force, and he believed that they knew he was friends of these two victims. The government also was unwilling to step in against his father, as is shown by the Moreover, the police at other times, when he was walking down the street with his friends, would witness verbal harassment of them, and either did nothing or at times would step in and join in the homophobic epithets. Your Honor, we believe that the record compels the conclusion that all of the evidence, when viewed cumulatively as this Court has held it should be, shows that the level of harm he suffered rises to the level of both persecution and torture. When this testimony, which was found credible by the IJ, is viewed without the lens of bias that Immigration Judge Ho viewed the evidence with, and without the incorrect legal analysis applied by the agency, the level of harm Ornelas Chavez suffered and the pattern of state indifference he encountered emerges as clear and compelling. If there are no further questions at this time, I will reserve my remaining time for rebuttal. You may do so, Counsel. We'll hear from the government. Good morning, and may it please the Court. Jocelyn Wright on behalf of Respondent, the United States Attorney General. I think it's important to clarify the two separate issues before the Court today. The first is, with respect to withholding, whether or not the sole incident, the one involving the chief of police, rises to the level of persecution. And if I understand Petitioner's argument correctly, with respect to the Catt claim, the argument is the incorrect legal standard was applied because there wasn't a requirement of state participation. And with that understanding, let me address first the withholding claim. The Board here conducted an independent review and issued its own decision, did not affirm that opinion, and so it is only the Board's decision that's before the Court, except to the extent that it may have agreed with the reasons stated by the immigration judge. And that procedural posture in itself, I think, to address first the due process claim of bias, cures that bias, cures that claim. Because if the Board conducted this independent review and applied an impartial eye to the facts, regardless of whether or not the evidence was considered nullified with respect to the Board's issuance of its decision, and there's no allegation in the record that the Board's independent assessment of the evidence was in any way impartial or biased with respect to Mr. Ornelas or his claim. Now, as to the withholding claim, the Board of Immigration Appeals specifically stated that it was only the one incident of police involvement that he bases his claim of persecution upon. And this Court has long held that to qualify for withholding of removal under the immigration statute, a petitioner must establish that it is more likely than not that he will be persecuted on account of a protected ground if he is returned to the country. And persecution may be either by the government or by an organization or individuals that the government is unwilling or unable to control. He doesn't have to be in the custody or control of a public official, then? No, Your Honor. No, he does not. Not under withholding. And under this Court's case law, not under CAT either. I must have misread your brief because it seemed to me that's what you argued. But you were not arguing that. I don't believe so. All right. Thank you. It's with respect to withholding, the Board's decision was that the one incident where he was detained by the chief of police in an event that was orchestrated by his parents and at his parents' request in order to influence his sexual identity, that that detention, six hours, and as Judge O'Scanlan pointed out, occurred 12 to 14 years before he left Mexico, doesn't rise to the level of persecution because there was no harm to him. Apparently the chief of police did this on his own, or at least as a personal favor to his parents. And according to the brief to the Board by the petitioner, he apparently came from a And so the chief of police may have had some kind of personal relationship and wanted to do this as a favor for petitioner's parents. Now, what about these other events that Ms. Weidner pointed out, beatings in prison, that sort of thing, attempt to kill? I'm sorry, Your Honor, what was that? What about the other events that you heard counsel mention, the beatings in prison and the attempt to suffocate him in prison? Again, whether or not those were related to government, whether or not those were ever reported to the government or the federal government of Mexico is not clear from the record. He says that he worked for a prison that was run by the government, but it's not clear whether it was a state government or a local government or the federal government. But does he have to report it to the government? Is there a bright-line rule that he must report it? This Court has specifically declined to address arguments made by petitioner about the per se reporting requirement, but there isn't one, Your Honor. I don't believe the Board has imposed one, and certainly this Court has not decided that issue. But in any event, in this case, the Board hasn't said that it was required to be reported. What the Board said was, with respect to withholding, that wasn't persecution, and so you can't rise, it doesn't rise to the level that's required. But with respect to the reporting requirement, if I understand petitioner's government is unwilling or unable to protect the petitioner, and also to the Catt claim whether or not there's government complicity or acquiescence in the acts that he alleges will constitute torture in the future. As far as I understand, the Board here simply said that where the record in this case is inconclusive on whether or not the government is unwilling or unable to protect the petitioner, then it cannot conclude here that he has met his burden of proof of more likely than not he would be tortured or a clear probability of torture if he should be returned. And again, the standard of review in this Court is whether the record compels the conclusion that the Board was wrong. And here, the record doesn't compel that conclusion because, as the Board pointed out, the record is inconclusive with respect to that aspect of the claim. And I would point to the administrative record at pages 580 to 585, which is a question-and-answer report that was issued by the Immigration and Naturalization Service, or Department of Homeland Security, to train its asylum adjudicators. And this was dated in 2000. It sets forth their significant political and legal gains with respect to homosexuals and gay pride in Mexico. It acknowledges that Mexico follows a Napoleonic code, which means that private behavior is exempt from legal interference as a general rule, which includes private sexual acts between consenting adults. It points out that discriminatory language relating to homosexuality has been a federal penal code, and that was in 1998. And it also expressed the opinion that because the legislative assembly of the federal district is the body that passed that, that there's no reason to believe that other constituents that are smaller around the country would also follow. It also points out that homosexuals participate in two out of the three active political parties in the governing body. Homosexuals are invited to participate and take part in educational programs and television debates. It points out that the then-President Zedillo appointed an openly bisexual man to be the diplomat to Cuba. The first openly lesbian congressperson was elected into the Congress. And also the legislative assembly of the federal district, there was also another congressman who was elected to that position. And apparently one of the more accommodating and tolerant parties with respect to gay rights does dominate the federal, is the legislative assembly of the federal district. And because of that, there has been a significant improvement in the government's treatment and tolerance for gay rights. Scalia. Counsel, are all of these elements that you're mentioning in the record or are these post-record? Kagan.  Scalia. These are in the record. It's not something that has occurred. Kagan. These are all in the record after the close of the record. Kagan. Oh, no. These are all in the record, Your Honor, at pages, again, not the excerpts of record that was prepared by Petitioner, but the administrative record at pages 580 to 585. And in addition, we cite documents in our brief, including a New York Times Service 1997 article, as well as the State Department reports. Counsel, since your time is running out, I'd like to clarify something for my own benefit. It is clear that the immigration judge seemed to impose a reporting requirement. Are you saying that the BIA rejected that? I mean, assuming that that was an improper legal standard, that the BIA did not apply that standard? I believe that's correct, Your Honor. And I believe the reporting requirement, as far as I can understand it, Petitioner is challenging that only with respect to the CAT claim. All right. Nonetheless, my question is, did the BIA apply that standard? I don't believe that it did, Your Honor. My reading of the board decision with respect to the CAT aspect, it says that we agree with the immigration judge that the respondent did not prove that if removed to Mexico, he more likely than not will suffer torture as specifically defined by the regulation. And the immigration judge's decision simply says that the government doesn't, there's no evidence that the government sanctions the type of torture. But he also said that it wasn't reported, and that was required. And I'm trying to, I'm considering, and I'm speaking only for myself, whether a remand is necessary. If the BIA confirmed what the immigration judge did, and it was improper, then they would have to look at it again under a proper legal standard. If they did not, if they rejected that, that would be a different issue. I believe, Your Honor, that in this case, there's no need to reach the reporting requirement issue simply because the record doesn't compel the conclusion that the country conditions in Mexico, or that the government is unwilling or unable, or that there was any kind of government complicity in the treatment that Mr. Ornelas Chavez here received. I would agree, Your Honor, that if there was an incorrect legal standard, the appropriate course of action would be to remand based on Ventura. Thank you. But you're not conceding that, I gather. No, I'm not, Your Honor. Okay. Thank you. Thank you. Counsel, you have some reserved time. Ms. Weider? Thank you, Your Honors. First, I would just like to clarify that our claim as to the reporting requirement erroneous legal standard is for the withholding of removal claim. Both the immigration judge and the BIA stated, and in fact, the BIA on page 415 of the excerpts of record says in two sentences that all of the harm suffered by Ornelas Chavez occurred at the hands of private citizens. Respondent did not report any of these incidents to the authorities. I think from that, it's clear that the BIA was also applying a reporting requirement for the withholding claim. First, I would just like to say that both the BIA's approach and the government's approach of singling out this one instance of detention is incorrect under this Court's case law. This Court has repeatedly held that for persecution, the Court will review the cumulative harm of the incidents of persecution suffered. For example, in Chan v. INS and Mimouzian v. Ashcroft, the Court looked at all of the incidents in a cumulative total rather than just looking at them in isolation, and in fact held that the harm is compounded when incidents of persecution occur over a period of years, and fiscal abuse is compounded with death threats and unlawful detention. That is exactly what happened here in this case. Second, moving on to the government's claim that the BIA's decision somehow obviates the need to remand for a hearing that comports with due process, the BIA did not quibble with the IJ's factual findings. And the factual findings made by the immigration judge in this case clearly are biased and in some case, frankly, offensive. For example, when she found that the rapes suffered by Arnelas Chavez as a 7-, 8-, and 9-year-old were some sort of consensual sex. The BIA does not refute the factual record, and its adoption of this factual record taints its findings. Moreover, with respect to the Catt claim, the BIA did not make any independent findings. Rather, it simply said that it agreed with the immigration judge and affirmed her finding on that matter. We believe that if the court does not find that the record compels, as we urge it to do, the conclusion that withholding of removal and convention against torture relief is required, at a minimum, as Your Honor noted, remand is appropriate to apply to the correct legal standards on both claims. As counsel noted, Ventura requires that the agency, if the record is not compelling one way or the other, take another crack at the case under the correct legal standard. And if the BIA looked at all of the evidence, not just this one incidence of detention, it may very well find that Arnelas Chavez has suffered persecution and torture. If there are no further questions, we ask that the court reverse the agency in this case, or at a minimum, remand for further proceedings. Thank you, counsel. Thank you.
judges: Browning, D.W. Nelson, O'Scannlain